**Samuel M. PEARSON, Plaintiff,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Defendant.**

**No. 77 C 629.**

United States District Court,
E. D. New York.

Jan. 25, 1978.

Raphael Persky, New York City, for plaintiff.

David G. Trager, U. S. Atty., E.D.N.Y. by Michael Cavanagh, Asst. U. S. Atty., Brooklyn, N. Y., for defendant; Vicki G. Cheikes, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., of counsel.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This is an action for the refund of federal income taxes in which the plaintiff has asserted alternative grounds for relief.

Defendant, Internal Revenue Service ("IRS"), has moved pursuant to Rule 12 of the Federal Rules of Civil Procedure, to dismiss the above-titled action on the grounds that defendant is entitled to judgment on the pleadings with respect to Count One of the complaint and that this Court lacks subject matter jurisdiction over Count Two of the complaint.

## FACTS

The facts, which for purposes of this motion, we assume to be true, are taken from the plaintiff's complaint and are as follows:

The plaintiff, Samuel Pearson, in 1951 became a stockholder in the Dreyfus Corporation, which corporation was the investment advisor and underwriter of The Dreyfus Fund, Incorporated, a mutual fund. (Compl. par. 8 and 9). In October, 1965, the stockholders of The Dreyfus Corporation sold the bulk of the shares in the corporation. (Compl. par. 10). At the time of this sale, the plaintiff owned 5.19% of the stock, and his share of the proceeds of the sale totalled $2,287,371.30. (Compl. par. 11). The plaintiff reported the sale on his 1965 income tax return as a long term capital gain, and paid the tax thereon. (Compl. par. 12).

In April, 1968, several shareholders of The Dreyfus Fund, Incorporated, brought suit against the plaintiff and the other shareholders of The Dreyfus Corporation, alleging, in part, that these corporate shareholders should be required to account for the unlawful proceeds of the stock sale. (Compl. par. 13). This action was tried in 1971, but prior to a decision being rendered, the parties entered into a Stipulation of Settlement, under which the corporate shareholders would pay $5,000,000 to the fund shareholders. (Compl. par. 14, 15 and 16). Plaintiff's pro rata share of this settlement was $279,000, which amount he paid in 1971. (Compl. par. 19). The settlement was approved in a decision by the United States District Court, *Newman v. Stein*, CCH Fed.Sec.L.Rep. ¶ 93,316 at 91,718 (S.D. N.Y.1971) (McLean, J.) which was affirmed by the Court of Appeals for this Circuit, *Newman v. Stein*, 464 F.2d 689 (2d Cir.) (Friendly, C. J.), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972).

Plaintiff apparently did not report the $279,000 payment in any manner on his 1971 income tax return but on the audit thereof the IRS auditing agent, for reasons which are not disclosed in the papers before this Court, "gave" the plaintiff credit for the payment as a long term capital loss.

The plaintiff contends, that the $279,000 payment should properly be treated as an ordinary loss rather than a long-term capital loss. This treatment, according to the plaintiff, results in a net operating loss which he may carry-back to 1968, resulting in a refund due for that year. Plaintiff has timely filed a claim for refund for 1968 asserting this position. Alternatively, plaintiff claims that he may compute his tax for the 1971 year under the mitigation provisions of Section 1341 of the Internal Revenue Code ("IRC"). (Compl. par. 31).

## DISCUSSION

### I

█ As to plaintiff's first contention above, the defendant IRS has moved to dismiss it on the grounds that they are entitled to judgment on the pleadings. This Court has already denied this portion of defendant's motion on the grounds that plaintiff raised the possibility that some portion of the 1971 settlement payment might have been in satisfaction of other claims in the litigation not related to the original 1965 sale of securities and thus not subject to the doctrine of *Arrowsmith v. Commissioner of Internal Revenue*, 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6 (1952). This possibility could not be dismissed by the Court and thus the Court denied this portion of defendant's motion, indicating that further discovery was required solely to determine to what extent the settlement did not reflect repayment on the claims related to the 1965 sale. In this regard, the Court notes that the Second Circuit, in affirming the settlement in question, *Newman v. Stein, supra,* strongly suggests that the settlement related substantially, if not wholly, to the claims arising out of the original securities sale. This Court does not intend to repeat the work of the Second Circuit in this regard and thus considers it plaintiff's burden to provide probative evidence rebutting these conclusions by the Second Circuit. No further discussion of this facet of defendant's motion is necessary at this time.

### II

Defendant IRS also moves to dismiss Count Two of plaintiff's complaint, which claims that he should be allowed to compute his tax for the 1971 year under the mitigation provisions of Section 1341 of the IRC, on the grounds that this Court lacks subject matter jurisdiction due to plaintiff's failure to specify this claim in his refund claim filed with the IRS.

Section 1341 of the IRC provides in pertinent part that:

(a) General rule.—If—

(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

(3) the amount of such deduction exceeds $3,000,

then the tax imposed by this chapter for the taxable year shall be the lesser of the following:

(4) the tax for the taxable year computed with such deduction; or

(5) an amount equal to—

(A) the tax for the taxable year computed without such deduction, minus

(B) the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).

For purposes of paragraph (5)(B), the corresponding provisions of the Internal Revenue Code of 1939 shall be chapter 1 of such code (other than subchapter E, relating to self-employment income) and subchapter E of chapter 2 of such code.

█ Filing of a timely refund claim with the IRS is a prerequisite to the maintenance of an action to recover taxes alleged to have been improperly assessed or collected. Int.Rev.Code of 1954, § 7422(a). The claim must set forth in detail each ground upon which a refund is claimed and facts sufficient to apprise the Commissioner of the exact basis of the claim. Treas. Reg. § 301.6402–2(b)(i). Consequently, a court lacks jurisdiction of an action to recover taxes except upon grounds reasonably encompassed by the claim for refund. *Hempt Bros., Inc. v. United States*, 354 F.Supp. 1172, 1182 (N.D.Pa.1973), *aff'd on other grounds*, 490 F.2d 1172 (3d Cir.), *cert. denied*, 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974) and cases cited therein at n. 24. The

purpose of this rule is to facilitate administrative determination of claims and to limit litigation to issues which the Commissioner has considered and is prepared to defend. *Id.* at 1182.

Defendant alleges that this Court lacks jurisdiction over the Section 1341 ground for refund "not only because the plaintiff failed to raise it in the claim he filed for 1968, but also because he failed to timely file a proper claim for 1971." Defendant's Memorandum of Law at 6.

■ As to defendant's claim that plaintiff failed to notify the IRS of a claim as to his 1971 return, making instead only a claim as to his 1968 return, an examination of the communications between the parties and the papers exchanged and filed reveals that the IRS considered plaintiff's claim in light of *both* the 1968 and 1971 tax returns. This conclusion finds support in the following facts:

‿ (1) The refund claim referred to 1968 as the period for which tax relief was sought, but also clearly stated that the basis for the claim was a payment made by plaintiff in 1971;

(2) A letter dated July 26, 1976 sent by the District Director to plaintiff, advising him that Agent R. M. Gedgard had been assigned to examine plaintiff's claim, referred to 1971 as the year in question;

(3) Agent Gedgard's handwritten note sent to plaintiff's attorney requesting certain information and documents referred to both the 1968 and 1971 tax returns and was captioned "Pearson—1968–71";

(4) IRS Form 4549–A, entitled "Income Tax Audit Changes" lists both 1968 and 1971 as the years for which adjustments had been sought (and denied);

(5) IRS Form 886–A entitled "Explanation of Items" is subcaptioned "Adjustments 1968 & 1971" and refers to "6812–7112" as the "year/period ended."

The above facts indicate that the IRS, in evaluating plaintiff's claim, considered plaintiff's tax liability in both 1968 and 1971 in so far as it pertained to the question of the tax treatment of the litigation settle-ment payment. While the claimed tax refund was technically made on the 1968 return, this was only by virtue of provisions of the IRC governing net operating loss carrybacks and thus presupposed IRS review of the plaintiff's claim that the payment should be treated as an ordinary loss in his 1971 return. Therefore, the Court holds that, notwithstanding the technical formulation of the claim as one for the 1968 return, plaintiff's claim also comprises the 1971 return and thus enables the Court to consider claims as to the 1971 return of which the IRS was properly notified.

Having determined that the refund claim practically and effectively encompassed a claim for 1971, the only remaining question is whether the IRS was given reason to perceive plaintiff's claim as one for Section 1341 treatment or, in the alternative, whether the IRS actually considered the Section 1341 claim. As noted by the Tenth Circuit in *Herrington v. United States*, 416 F.2d 1029, 1032 (10th Cir. 1969), "if the claim fairly apprises the Service of the ground on which recovery is sought or if the Service *actually considers the ground later sought to be raised* the claim will be held adequate for the purposes of bringing suit under § 7422." (Emphasis added).

■ The statutes requiring filing of claim before suit should be given a practical construction. *Kales v. United States*, 115 F.2d 497, 500 (6th Cir. 1940), aff'd, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941). Hence, in considering the sufficiency of a claim, proper consideration should be given to its spirit and purpose and the surrounding facts and circumstances in light of the statute. *Id.* at 501.

When evaluating a claim, one must be cognizant of the purposes of the jurisdictional requirement—to prevent surprise and to give adequate notice to the IRS of both the nature of the claim and the specific facts upon which it is predicated. *Union Pacific Railroad Co. v. United States*, 389 F.2d 437, 442, 182 Ct.Cl. 103 (1968), *cert. denied*, 395 U.S. 944, 89 S.Ct. 2017, 23 L.Ed.2d 462 (1969). An administrative in-

vestigation and determination is thereby made possible (*id.*) without the expense and time which would be consumed if every claim had to be litigated. *Herrington v. United States, supra,* at 1032.

As the Ninth Circuit succinctly stated: "The statute and regulations governing claims are devised for the convenience of government officials in passing on claims for refunds and in preparing for trial, and they are not 'traps for the unwary.'" *Rogan v. Ferry,* 154 F.2d 974, 977 (9th Cir. 1946).

■ To effect the statutory purposes, a "substance over form" standard of review is employed. *Kales v. United States, supra,* at 500. Applying this standard to the facts of the instant case, it is not clear

(i) whether the IRS may in good faith on the commencement of this suit claim surprise or that it did not have adequate notice of both the nature of the claim and the specific facts upon which the claim is predicated, or

(ii) whether the IRS auditing agent had adequate information at the time of the initial adjustment at audit from which to have apprised the plaintiff of the tax credit to which he may be entitled under Section 1341.

With respect to the first of such issues, we note in passing that at the trial the taxpayer will have to show that on review by the IRS of plaintiff's claims there were sufficient facts presented to it for purposes of deciding his entitlement to the benefits of Section 1341.

As to the second of such issues, the taxpayer may be able to show that on the audit the IRS agent, having been fully advised as to all of the history and facts of this matter, undertook to advise the taxpayer that he was entitled only to a long term capital loss in 1971 and failed to advise of the mitigating benefits accorded by Section 1341.

With regard to these two issues, the taxpayer's position is further supported because of the apparent interrelationship between the doctrine enunciated by the United States Supreme Court in *Arrowsmith v. Commissioner of Internal Revenue,* 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6 (1952) and Section 1341.[1] Therefore, on the basis of the record presently before it, this Court feels that there may be good grounds for the plaintiff's claim that the IRS has no basis for a claim of surprise or other prejudice by the maintenance of this claim, and hence this Court must deny defendant's motion to dis-

---

1. In *Arrowsmith, supra,* the Supreme Court held that two taxpayers who had realized a capital gain in the liquidation of their corporation must treat as a capital loss the subsequent payment of a judgment against the corporation which the taxpayers, as transferees of the assets of the corporation, had to pay. The general principle of the case, therefore, is that subsequent repayment of a previously reported and taxed gain must, for tax purposes, assume the same character as the original gain. In the instant case, the IRS argues that the settlement constituted a repayment of a portion of the capital gain realized in the original sale of the Dreyfus Corporation shares and thus should be treated as a capital and not an ordinary loss. Section 1341 of the IRC provides that a deduction in any given taxable year which is in essence a repayment of previously reported gross income to which the taxpayer originally appeared to have, but ultimately did not, an "unrestricted right", can, in the alternative, give rise to a tax credit (the tax first being computed without the deduction in question) in the amount of the reduction in tax liability that would have been realized if the present deduction had been excluded from the gross income in the original return, IRC § 1341(a)(5). This alternative tax treatment for such deductions was instituted, in 1954, to "alleviate some of the inequities which Congress felt existed in this area." *United States v. Skelly Oil Company,* 394 U.S. 678, 681, 89 S.Ct. 1379, 1381, 22 L.Ed.2d 642 (1969).

One such inequity was that created by the *Arrowsmith* case, *see Arrowsmith, supra,* at p. 882, and indeed the Regulations under Section 1341 specifically provide for the application of this mitigating alternative tax to the instant context of subsequently repaid capital gains. Treas. Reg. § 1.1341-1(c). Thus Section 1341's mitigation provision is essentially a concomitant of the *Arrowsmith* doctrine. In other words, once it was determined by the IRS that *Arrowsmith* applies, Section 1341 relief then became potentially obtainable. *Cf.* Lokken, *Tax Significance of Payments in Satisfaction of Liabilities Under Section 16(b) of the Securities Exchange Act of 1934,* 4 Ga.L.Rev. 298, 315–20 (1970).

miss at this time without prejudice to a renewal thereof on a subsequent motion or at trial on an adequate showing by the IRS of surprise or other prejudice.

Accordingly, defendant's motion to dismiss should be, and the same hereby is, in all respects, denied.

SO ORDERED.